# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>       Plaintiff,<br><br>    v.<br><br>J.M.I. STEEL, INC., a California corporation,<br><br>       Defendant. | Case No. 2:25−cv−01145 MWC (RAOx)<br><br>**CONSENT DECREE (DKT. 29)**<br><br>JS-6 |

CONSENT DECREE

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant J.M.I. Steel, Inc. ("Defendant") owns and operates a facility at 8983 San Fernando Road, City of Sun Valley, California, under Waste Discharger Identification number 4 19I030187 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of fabricating steel structures and other miscellaneous iron structures which include cutting, grinding, welding, drilling, and coating steel structures and components. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3446, covering Architectural and Ornamental Work.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

1

CONSENT DECREE

"CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, the General Permit generally requires all permittees to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

WHEREAS, on November 5, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

WHEREAS, on February 10, 2025, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25−cv−01145 MWC (RAOx) ("Complaint");

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

2

CONSENT DECREE

and surface waters, including the Tujunga Wash, the Los Angeles River, the Los Angeles River Estuary, and San Pedro Bay (collectively, "Receiving Waters");

**WHEREAS**, since receiving the 60-Day Notice Letter, Defendant has installed a new stormwater retention system and haul off policy set forth herein to improve stormwater management at the Facility and implement this Consent Decree;

**WHEREAS**, Defendant has provided Plaintiff with confidential financial information supporting Defendant's contention that further financial commitments beyond those made in this Consent Decree would not be financially feasible;

**WHEREAS**, Defendant denies any and all allegations in the Complaint and 60-Day Notice Letter relating to the Facility;

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

3

CONSENT DECREE

5.　　The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term.

## I.　OBJECTIVES

6.　　It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues which were alleged or could have been alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.　　In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.　AGENCY REVIEW AND DEFINITIONS

### A.　AGENCY REVIEW OF CONSENT DECREE

8.　　Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised

4

CONSENT DECREE

by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.  "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.  "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Sun Valley, Los Angeles, CA, USA."

j.  "MIP" means a Monitoring Implementation Plan.

k.  "PPT" means Pollution Prevention Team.

l.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.  "SWPPP" means a Storm Water Pollution Prevention Plan.

q.  "Term" means the period between the Effective Date and the "Termination Date."

r.  "Termination Date" means the latest of:

    i.  June 30 following two (2) years from the Effective Date;

6

CONSENT DECREE

      ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following five (5) years after the Effective Date; or

      iii.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    s.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. _Current and Additional Best Management Practices._ Defendant shall implement the BMPs identified in its SWPPP and the BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

13. _Rain Gauge/Sensor._ Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions

caused by something outside of Defendant's control. In the event of a rain gauge malfunction, Defendant shall use rain data from the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Sun Valley, Los Angeles, CA, USA" for purposes of precipitation quantities and timing.

14.    <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than sixty (60) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

a.    Repair all exposed damaged portions of the exterior ground surface of the Facility to the operational extent feasible;

b.    Conduct daily sweeping with hand brooms coupled with the use of a backpack vacuum of all accessible surfaces of the Facility. Twice monthly sweep and vacuum hard-to-reach areas beneath where material, product, and scrap is stored.

c.    Implement an annual power washing program to clean surfaces and hard-to-reach areas with all power washing liquids being properly collected and disposed of;

d.    Deploy waterproof tarps over all outdoor material, product, and scrap prior to a rain event that is forecasted with a thirty (30) percent probability of 0.1 inch or greater;

e.    Cover all metal scrap storage bins with tarps to ensure adequate coverage and reduce potential for leakage prior to a rain event that is forecasted with a thirty (30) percent probability of 0.1 inch or greater;

f.    Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint, and waste scrap from the entire property;

g.    Move the metal saw indoors;

8

CONSENT DECREE

h.  Move the drill press/grinding area that is currently situated near the sump in the "Covered Production Area" to an area indoors. Move all metal stored directly adjacent to the sump inlet indoors.

i.  Install downspout filters designed to remove zinc, iron and aluminum on all downspouts, such as New Pig Pipe Filter Socks;

j.  Wet Season BMPs

(1) Ensure that the removable cap to the sump pump basin has a watertight seal to allow stormwater to safely accumulate and pond within a designated collection area prior to transferring into storage tanks.

(2) Equip the sump pump with an automatic float switch positioned at/on the capped sump to automatically pump ponded stormwater into storage tanks when the water reaches approximately six (6) inches in depth.

(3) At the sump which collects stormwater at the site, deploy a double ring of metal-sorbing filter socks such as Filtrexx EnviroSoxx or Biochar socks prior to a rain event that is expected with a thirty (30) percent probability of 0.1 inch or greater;

(4) Redirect and capture stormwater into three (3) three hundred and thirty (330) gallon storage tanks to be hauled off-site by a contracted hauling company for legal off-site disposal. Designated Responsible Personnel shall arrange for stormwater removal before the storage tanks reach half capacity and ensure that tank capacity is fully restored prior to the following rain day. The Facility shall maintain hauling manifests and disposal records on-site.

(5) In the event of extreme weather conditions where water volume exceeds storage and hauling capacities, or where flooding poses a

9

CONSENT DECREE

risk beyond the Facility's control, Designated Responsible Personnel shall redirect stormwater to the Facility's original discharge point (DP1).

(6) Replace filters as necessary and/or socks when degraded or ineffective, including without limitation when there are rips, tears, or other visual damage, and/or sampling data demonstrating the filters and/or socks are not sufficiently reducing pollutant concentrations;

(7) Pre-Rain Protocol. Within twenty-four (24) hours prior to a Forecasted Rain Event:

    i. Remove any exposed waste material;

    ii. Move all industrial materials, scrap bins, and trash cans to a storm-resistant shelter or otherwise cover them with tarps, lids, or other coverings sufficient to prevent exposure to rainfall;

    iii. Ensure all storage tanks, hoses, and drains are free of clogs and operating as intended.

**B.** **SAMPLING AT THE FACILITY**

15. Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples in the event where the Facility's stormwater storage and hauling capacities is exceeded and results in a discharge. Such sampling shall take place at the time stormwater is redirected to the Facility's original discharge point.

16. <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1, with the exception of any investigative background sampling performed by Defendant that only requires analysis of specific, limited parameters, unless such an investigative sample was from a QSE.

CONSENT DECREE

17.     Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

18.     Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

19.     Reporting. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

C.     REDUCTION OF POLLUTANTS IN DISCHARGES

20.     Table 1 Numeric Limits. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| pH | 6.5-8.5 SU (instantaneous) | Basin Plan |
| Zinc (Zn) | 0.158 mg/L (instantaneous maximum NEL) | NEL |
| Iron (Fe) | 1.0 mg/L (instantaneous) | NAL |
| Aluminum (Al) | 0.75 mg/L (instantaneous) | NAL |

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given

11

CONSENT DECREE

21.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample from the Facility exceeds the applicable numeric limit contained in Table 1. An Exceedance shall trigger the requirements set forth in paragraph 22.

    a. BMP Report. Within ninety (90) days of the Effective Date, Defendant shall file a written report with LA Waterkeeper documenting any and all BMPs implemented pursuant to this Consent Decree, including with representative photographs, that each BMP has been implemented as set forth above.

    b. Each January 30 and April 30, beginning in 2027 and continuing through the term of this Consent Decree, Defendant shall provide LA Waterkeeper with stormwater hauling manifests and disposal records for the preceding period, as well as records identifying the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges.

    c. In the event that a discharge occurs, Defendant will further provide a report of Defendant's ability or inability to sample a rain event that is documented at >.1 inch during operating hours or, if

parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

Should Defendant intend to conduct sampling for any additional parameter(s) for any reason, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters pursuant to the Quarterly Reporting requirements as outlined in Paragraph __ below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

12

CONSENT DECREE

applicable, the complete laboratory results of all samples collected at the Facility and identify all results that are above the threshold limits in Table 1.

d.   Whether Defendant intends to conduct sampling for any additional parameters for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency.  In such instance, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 and the Parties shall meet and confer regarding the applicable Table 1 limit within thirty (30) days of such notification.

22.    Action Plan for Table 1 Exceedances. As of the Effective Date, and for the remainder of the Term, in the event of a discharge if storm water samples demonstrate an Exceedance as defined above (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility (a) Defendant has an unauthorized non-storm water discharge, or (b) Defendant receives a laboratory report for storm water samples that demonstrates an Exceedance as defined above (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event. ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of Defendant's receipt of the sampling data identifying the Trigger Event.

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the

13

CONSENT DECREE

identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

    b.   Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i.   Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        ii.   Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

        iii.   Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of

14

CONSENT DECREE

the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan.

e. <u>Action Plan Payments</u>. Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

23. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's

operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

24. Monthly Visual Observations. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

## D. TRAINING AND PLANS

25. Employee Training Program. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

    a. Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference

and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.   Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.   Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.   Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.   Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

17

CONSENT DECREE

g.   Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.   Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

26.   SWPPP Revisions.

a.   Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.   A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility, including but not limited to the Facility's outdoor storage of materials and products and waste bins, as required by Section X.G of the General Permit;

18

CONSENT DECREE

iii. Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including but not limited to descriptions of sweeping and vacuuming practices and without limitation BMPs required by this Consent Decree;

iv. A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including eliminating the southern "sump pump catch basin" as it does not exist and accurately depicting the drainage area, locations of downspouts, and flow directions;

v. A MIP as required by Sections XI and X.I of the General Permit;

vi. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii. A Training Program as described above in Paragraph 25.

b. Additional SWPPP Revisions.

i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision

19

CONSENT DECREE

(including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 26.a and 26.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.    COMPLIANCE MONITORING AND REPORTING**

27.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff

shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 55. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

28. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a. Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 55, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b. Within three (3) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 55, any compliance document, inspection report, written communication and/or correspondence,

21
CONSENT DECREE

or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

29. <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000.00) within thirty (30) days of the Entry Date.  Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.   ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

30. <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Tujunga Wash, Los Angeles River, the Los Angeles River Estuary, and San Pedro Bay, Defendant shall make a payment totaling Ten Thousand Dollars ($10,000.00) to Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, California 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

31. <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Forty Five Thousand Dollars ($45,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. A first installment of $5,000.00 shall be made within sixty (60) days of the Effective Date. Defendant shall make monthly payments of $5,000.00 for eight (8) months thereafter. The payment

shall be made payable to Lozeau Drury LLP and delivered by overnight carrier to Michael R. Lozeau, Lozeau Drury LLP, 1939 Harrison St., Suite 150, Oakland, California, 94612. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

32.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall notify Defendant, in writing of the missed deadline via electronic mail to the individuals identified in paragraph 55. Defendant shall have five business (5) days from receipt of the notification to cure the alleged deficiency. In the event Defendant fails to cure the alleged deficiency, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day after the notice and cure period that the delinquency continues. Such stipulated payments shall be made by check payable to: Rose Foundation, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 30. Payment shall be sent via overnight mail to Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability. If there is a good faith dispute regarding the missed deadline, the Parties shall engage in a meet and confer pursuant to paragraph 33.

**IV.    DISPUTE RESOLUTION**

33.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

34. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 33, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

35. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

36. <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, agents, attorneys and other representatives, does hereby release Defendant, its officers, directors, managers, employees, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, and waives any and all claims that were asserted or could have been asserted in the 60-Day Notice Letter and the action up to and including the Termination Date of this Consent Decree.

37. <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers and directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, agents, attorneys and other representatives does hereby release Plaintiff, its officers, directors, managers, employees, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, and waives any and all claims that were asserted or could have been

asserted in the 60-Day Notice Letter and the action up to and including the Termination Date of this Consent Decree.

38.     Waiver of California Civil Code § 1542. Upon the Effective Date of this Agreement, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
>
> WHICH THE CREDITOR OR RELEASING PARTY DOES NOT
>
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
>
> THE TIME OF EXECUTING THE RELEASE AND THAT IF
>
> KNOWN BY HIM OR HER WOULD HAVE MATERIALLY
>
> AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR
>
> RELEASED PARTY.

While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letter and/or the Complaint, up to and including the Termination Date of this Agreement.

39.     Covenant Not to Sue. As of the Effective Date of this Consent Decree, and for a period up to and including the Termination Date of this Consent Decree, Plaintiff agrees that neither Plaintiff, its officers, directors, executive staff, Lozeau Drury LLP, nor any individuals or organization under the control of Plaintiff, its officers, executive staff, or members of its governing board, will serve any 60-day Notice of Violations and Intent to Sue, file any lawsuit, or otherwise pursue any claim against Defendant or its respective affiliates, past and present employees, operators, officers, directors, officials, consultants, members, principals, agents and representatives, predecessors, successors, or assigns seeking relief for alleged

violations of the CWA, or any similar state statutes and/or regulations, including the Porter Cologne Water Quality Control Act (Cal. Water Code § 13000 et seq.), or of the General Permit, related to the Facility. Plaintiff further agrees that it shall not initiate or support the filing of any such lawsuit or the pursuit of any such claim against Defendant or its affiliates, past and present employees, operators, officers, directors, officials, consultants, attorneys, members, principals, agents and representatives, predecessors, successors, or assigns brought by other groups or individuals by providing financial assistance, personnel time, or any other affirmative actions, assistance or support. The Parties acknowledge and agree that this provision shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or by operation of law. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.   MISCELLANEOUS PROVISIONS

40.    No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

41.    Attorneys' Fees.  Other than the payment to Plaintiffs under Section 31, each Party shall bear its own past attorneys' fees and costs incurred in this action.

42.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

44. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

45. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

46. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

47. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

49. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

CONSENT DECREE

50.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

51.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

52.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

53.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

54.    Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party

seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

55.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org

Phone: (310) 394-6162

With copies to:
Michael R. Lozeau
Rebecca L. Davis
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
E-mail: michael@lozeaudrury.com
E-mail: rebecca@lozeaudrury.com

If to Defendant:
Martin Blaha
President
J.M.I. Steel, Inc.
8983 San Fernando Rd.
Sun Valley, CA 91352
E-mail: jmisteel@aol.com

With copies to:
Santino Tropea
Brandon Vegter
Tropea McMillan LLP
4747 Morena Blvd., Suite 250A
San Diego, CA 92117
E-mail:stropea@tropeamcmillan.com
       bvegter@tropeamcmillan.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

CONSENT DECREE

56.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: March ___, 2026                    By: _____
                                                    Bruce Reznik
                                                    Executive Director
                                                    Los Angeles Waterkeeper

Dated: March ___, 2026                    By: _____
                                                    Martin Blaha
                                                    President

30
CONSENT DECREE

APPROVED AS TO FORM

LOZEAU DRURY LLP

Dated: March __, 2026          By: _____
                                    Michael R. Lozeau
                                    Attorney for Plaintiff
                                    Los Angeles Waterkeeper

TROPEA MCMILLAN LLP

Dated: March__, 2026          By: _____
                                    Santino Tropea
                                    Attorney for Defendant
                                    J.M.I. Steel, Inc.

**IT IS SO ORDERED.**

## **FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: May 29, 2026          CENTRAL DISTRICT OF CALIFORNIA

_____
Hon. Michelle Williams Court
United States District Court Judge